UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS MCNELLEY and KAREN PARIS,<br><br>Plaintiffs,<br><br>v.<br><br>7-ELEVEN, INC.,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 22-cv-10046-ADB<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiffs Thomas McNelley ("Mr. McNelley") and Karen Paris ("Ms. Paris) (collectively, "Plaintiffs"), brother and sister, brought this action against Defendant 7-Eleven, Inc. ("7-Eleven" or "Defendant"), alleging that 7-Eleven discriminated against them because of their disabilities, in violation of Massachusetts' public accommodation law, Massachusetts General Laws Chapter 272, § 98; and also violated the Massachusetts' consumer protection law, Massachusetts General Laws Chapter 93A.  The case was presented to a jury from May 1 to May 3, 2023.  As to the first count, the jury found 7-Eleven liable for discrimination in a place of public accommodation as to Mr. McNelley but not Ms. Paris.  [ECF No. 29].  On the second count, the jury found that 7-Eleven had violated Chapter 93A, but had not done so willfully or knowingly.  [Id.].  The jury awarded Mr. McNelley $5,000 in emotional distress damages and $15,000 in punitive damages, and awarded Ms. Paris no damages.  [Id.].  Now pending before the Court is 7-Eleven's motion for judgement as a matter of law and/or for a new trial.  [ECF No. 31].  For the reasons set forth below, 7-Eleven's motion is DENIED.

I.      **EVIDENCE AT TRIAL**

In reaching its verdict, the jury could have found the following facts, based on the evidence presented at trial.[1]  These facts are construed in the light most favorable to the jury verdict.  See Osorio v. One World Techs. Inc., 659 F.3d 81, 84 (1st Cir. 2011) (quoting Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010)).

   A.     **Mr. McNelley's Disability**

Mr. McNelley has cerebral palsy and uses a wheelchair.  Ms. Paris, Mr. McNelley's sister, has been Mr. McNelley's primary caregiver since 2006.  She provides for all his basic needs, including feeding and bathing him, and accompanies him to medical visits and anywhere else he goes.  Mr. McNelley is nonverbal; he communicates with Ms. Paris through eye movements and head gestures.[2]

   B.     **Plaintiffs' Experience Shopping at the Store**

Plaintiffs used to live a three-to-five-minute walk from the 7-Eleven store at One First Avenue in Charlestown (the "Store") and, from 2018 to 2019, would shop there frequently, despite there not being usable handicap parking or an automatic door, which made entering difficult.

---

[1] The testifying witnesses at trial were Ms. Paris and Rachid Bumlik ("Mr. Bumlik"), the Store's manager.

[2] Ms. Paris is hard-of-hearing ("HOH") deaf in addition to having other medical issues.  She was completely deaf as a young child.  Although she had several operations that restored her hearing, it deteriorated again in adulthood.  At the relevant time (2018–2019), Ms. Paris was using a notebook to communicate.  In December 2019, Ms. Paris got hearing aids that allow her to communicate verbally.  She would ask others to write in her notebook, so that she could read it and respond in writing.  If people did not use her notebook, she would read their lips, which she testified was difficult for her to do.

Ms. Paris testified that once inside the Store, there were a number of aisles with merchandise for sale and each aisle had an end cap. The entryway, between the entrance and the aisles, was small and difficult to navigate. The dimensions of the aisles were narrow, and were made narrower by the presence of boxes, some gathering dust (suggesting they had been there for a long time); bottles of beer, wine, and other beverages; and others item stacked up along the end caps and in the aisles themselves. Mr. Bumlik, the Store's manager since it opened in 2016, confirmed that 7-Eleven had a practice of storing items on the floor in the aisles, but that these items were inventory that had been delivered that day (and, would not have been sitting long enough to collect dust). With these stacked items, the aisles were just wide enough to accommodate Mr. McNelley's wheelchair, but when someone else came down the aisle in the opposite direction, Mr. McNelley would have to back up out of the aisle to allow them to pass. Additionally, Mr. McNelley's wheelchair would sometimes hit up against the boxes stacked in the aisles.

To the right upon entering the store, there were cash registers as well as a set of stairs leading to a second level, where additional merchandise for sale was located. Past the cash registers, there was a ramp that went up to the second floor. The bottom portion of the ramp had two handrails and was generally clear. Halfway up the ramp, there was a sharp turn. Ms. Paris testified that when the Plaintiffs visited the Store, similar items to those stacked up in the aisles—boxes, beer, wine, and other items—were stored on this portion of the ramp, piled from the floor to the handrail. Mr. Bumlik confirmed that if Plaintiffs came in following a delivery, there was likely to be inventory on the ramp.

The items on the ramp obstructed the use of one of the ramp's two handrails. In order to push Mr. McNelley's wheelchair up this portion of the ramp, Ms. Paris had to physically lift and

pivot the wheelchair. At times, given how little room there was for Mr. McNelley's wheelchair to pass between the stacked inventory and the other side of the ramp, Mr. McNelley's wheelchair would knock over inventory. When this occurred, Ms. Paris would need to bring Mr. McNelley back down to the bottom of the ramp and pick up the boxes, before again pushing Mr. McNelley's wheelchair up the ramp. The stacked inventory thus made the ramp extremely difficult to navigate.

Ms. Paris testified that the challenges of navigating the store resulted in her and Mr. McNelley doing their shopping online (via Amazon Fresh) or having her sister do it, which took away Tom's independence and the joy he took in going to the store and making his own choices. She also testified that Mr. McNelley suffered emotionally as a result of visiting the Store.[3]

    **C.**    **Plaintiffs' Requests for Accommodations**

Ms. Paris testified that she raised accessibility issues with Store employees, specifically telling them that the items stacked in the aisles and on the ramp needed to be moved. She further testified that she continued to return to the Store on the understanding from these interactions with Store employees that the issues would be rectified and the obstructions would be removed. Nevertheless, the stacked items were only moved on one of Plaintiffs' subsequent visits. Ms. Paris understood from her interactions with Store employees that, in the future, she would need to call the Store to have someone move the boxes before they went to shop, or that someone at

---

[3] On Plaintiffs' first visit to the Store, although Ms. Paris asked the person working behind the cash register to use her HOH book to communicate with her, they did not. This happened again on several subsequent visits. During one of these interactions, a Store employee yelled at Ms. Paris. This caused Mr. McNelley to put his hands up and stiffen, which Ms. Paris testified was a nervous response. Ms. Paris further testified that Mr. McNelley generally has this reaction, in addition to his legs shaking uncontrollably, in response to loud noises.

the Store could do her shopping for her.

Mr. Bumlik testified the Store only received inventory deliveries during operating hours (which were 5:00 AM–11:00 PM), and typically between 6:00 AM and 3:30 PM. He further testified that the Store did not receive deliveries outside of operating hours because there would no one there to receive them. He also explained that he had not discussed with management various potential alternatives to storing inventory on aisle floors and on the ramp, including installing higher shelves; getting a permit for a storage pod in the back of the store; or acquiring more rental space in the building.

## II.     JUDGMENT AS A MATTER OF LAW

### A.     Legal Standard

7-Eleven argues in its Federal Rule of Civil Procedure 50 motion for judgment as a matter of law ("JMOL") that there is insufficient evidence to support the jury's verdict. [ECF No. 31 at 1–2]. "A party seeking to overturn a jury verdict faces an uphill battle." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Id. (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)). In evaluating a motion for judgment as a matter of law, the Court must consider "the evidence presented to the jury, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict." Osorio, 659 F.3d at 84 (quoting Granfield, 597 F.3d at 482).

### B.     Discussion

7-Eleven argues it is entitled to JMOL on both Mr. McNelley's Chapter 93A and Chapter 272, § 98 claims, because Plaintiffs failed to present any evidence to establish damages. [ECF

5

No. 31 at 3–5]. Additionally, as to the Chapter 272, § 98 claim, discrimination in a place of public accommodation, 7-Eleven argues that Plaintiffs were required and failed to "(1) [present evidence that showed that] the facility was not compliant with current laws; (2) suggest a plausible method of remedying the violation; and (3) show that such a method is readily achievable." [Id. at 4].

### 1. Whether There is Sufficient Evidence of Damages

7-Eleven argues it is entitled to JMOL on Mr. McNelley's Chapter 93A claim because the evidence did not establish that Mr. McNelley incurred cognizable damages under Chapter 93A. [ECF No. 31 at 4–5]. Specifically, 7-Eleven asserts that "Plaintiffs were required [and failed] to present evidence that they suffered monetary loss or property damage as a result of an unfair business practice." [Id. at 4 (citing Massachusetts Superior Court Civil Practice Jury Instructions, § 16.6.3 (MCLE 2014); Haddad v. Gonzalez, 576 N.E.2d 658, 664 (Mass. 1991); Maillet v. ATF-Davidson Co., 552 N.E.2d 95, 99–100 (Mass. 1990); Lingis v. Waisbren, No. 01-2747-E, 2006 WL 452942 (Mass. Super. Ct. Feb. 25, 2006), judgment entered, 2006 WL 6013524 (Mass. Super. Ct. June 08, 2006), vacated, 914 N.E.2d 976 (Mass. App. Ct. 2009))]. Further, 7-Eleven urges that Plaintiffs also failed to present any evidence of emotional injury. [Id. at 3–4].

To begin, contrary to 7-Eleven's assertion, in the context of actions brought by consumers, Chapter 93A's injury requirement "may be met by showing either an economic or a noneconomic injury." Bellermann v. Fitchburg Gas & Elec. Light Co., 54 N.E.3d 1106, 1110 (Mass. 2016) (citing Hershenow v. Enterprise Rent–A–Car Co. of Boston, 840 N.E.2d 526, 535 (Mass. 2006)). Specifically, "[t]he relevant 1979 amendments [to Chapter 93A] . . . clarified that the Legislature intended to permit recovery when an unfair or deceptive act caused a personal injury loss such as emotional distress, even if the consumer lost no 'money' or 'property.'"

6

Hershenow, 840 N.E.2d at 533 (citing Haddad, 576 N.E.2d at 664–65); see also Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 746 n.20 (Mass. 2013) (explaining that although "unlikely that a merchant's use of a consumer's personal identification information . . . would cause the consumer to suffer either a readily quantifiable loss of money or property or measurable emotional distress[,] . . . receipt of unwanted marketing material . . . represents an invasion of the consumer's personal privacy causing injury or harm worth more than a penny"); Massachusetts Superior Court Civil Practice Jury Instructions, § 16.6.2 (MCLE 2014) ("[Y]ou may compensate the plaintiff for what the courts have called 'the invasion of any legally protected interest.'  What that means is that the plaintiff also is entitled to be compensated for injury, such as emotional upset the plaintiff sustained, in addition to the loss of use of money or property.").

As to evidence of Mr. McNelley's emotional distress, Ms. Paris testified that as a result of the Store's inaccessibility, she and Mr. McNelley could not do their grocery shopping in person, which in turn took away Mr. McNelley's independence and the joy he took in making his own choices.  Following Plaintiffs' first visit to the Store, Mr. McNelley communicated to Ms. Paris that shopping in the Store was not a good situation.  Finally, Ms. Paris testified that Mr. McNelley had suffered emotionally as a result of visiting the Store.  Although this evidence was relatively limited, a reasonable jury could have nonetheless found that 7-Eleven's conduct caused Mr. McNelley to suffer emotional distress.  See, e.g., Espinosa v. Metcalf, No. 21-cv-10356, 2023 WL 4157245, at *5 (D. Mass. June 23, 2023) (in the context of awarding Chapter 93A damages, citing approvingly to cases in which "[c]ourts have considered damage awards for mental anguish 'where the testimony has been limited to fairly generalized statements about anger and frustration'" and "damages [were awarded] in sums ranging from $100.00 to

$5,000.00[.]'"). As this is 7-Eleven's only argument related to Mr. McNelley's Chapter 93A claim, the Court concludes that 7-Eleven is not entitled to JMOL on this claim.

Similarly, the Court finds that the jury could have credited the same evidence in the context of the Chapter 272, § 98 claim. The Court therefore does not disturb the jury's verdict on this claim on this basis.

### 2. Whether There is Sufficient Evidence of Discrimination in a Place of Public Accommodation

7-Eleven also argues it is entitled to JMOL on Plaintiffs' Chapter 272, § 98 claim, because

> [p]laintiffs were required to "present evidence that: (1) the facility was not compliant with current laws; (2) suggest a plausible method of remedying the violation; and (3) show that such a method is readily achievable." No evidence was presented to the jury regarding any of these elements. The jury had no evidence of any measurements relating to the conditions at the store or what the law even required. The jury had absolutely no evidence to establish that the store failed to comply with any current legal standards. Similarly, even had there been evidence of legal deficiencies, no evidence was presented to suggest how the store should be modified to comply with the legal requirements. Further, no evidence was presented as to any method to address the unproven violations. Plaintiff was required to submit evidence of "precise cost estimates and specific construction plans, to show that [their] proffered design is readily achievable." No such evidence was presented and 7-Eleven is entitled to judgment as a matter of law.

[ECF No. 31 at 4].

Pursuant to the Massachusetts Public Accommodation Law, Chapter 272, § 98:

> Whoever makes any distinction, discrimination or restriction on account of . . . any physical or mental disability . . . relative to the admission of any person to, or his treatment in any place of public accommodation, resort or amusement . . . shall be liable to any person aggrieved thereby for such damages as are enumerated in section five of chapter one hundred and fifty-one B . . . . All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons.

Mass. Gen. Laws. ch. 272, § 98; see also LaBonte v. Riverside Park Enters., Inc., No. 22-cv-30046, 2022 WL 17253663, at *5 (D. Mass. Nov. 28, 2022) (citing Mass. Gen. Laws. ch. 272,

8

§ 98).  There is relatively little caselaw interpreting Chapter 272, § 98.  As such, courts look to caselaw interpreting the Americans with Disabilities Act ("ADA").  See Nathanson v. MCAD, No. 199901657, 2003 WL 22480688, at *4 (Mass. Sup. Ct. Sept. 16, 2003) ("The [ADA] is a statute with objectives similar to those of [Mass. Gen. Laws ch.] 272, § 98 . . . .  It is thus appropriate to look to the ADA, and decisions interpreting it, for guidance when interpreting the provisions of the Massachusetts Public Accommodation statute." (citing Lesley v. Hee Man Chie, 250 F.3d 47, 58 n.17 (1st Cir. 2001))); see also LaBonte, 2022 WL 17253663, at *5 ("Interpretation of [Mass. Gen. Laws ch. 272, § 98,] proceeds 'hand in hand' with the interpretation of the Americans with Disabilities Act . . . ." (quoting Lesley v. Hee Man Chie, 81 F. Supp. 2d 217, 226 (D. Mass. 2000), aff'd, 250 F.3d 47)).

"Title III of the ADA targets discrimination by privately operated places of public accommodation (including supermarkets and other types of retail shops).  It sends a bluntly worded message to those establishments that fall within its purview: you may not discriminate against an individual in the full and equal access to goods and services on the basis of a disability."  Dudley v. Hannaford Bros. Co., 333 F.3d 299, 303 (1st Cir. 2003).

The ADA defines discrimination to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii).  Although, as 7-Eleven argues, more may be required to show the reasonableness of a proposed modification to a building, this is not necessarily the case for a

9

claim based on a failure to modify a policy or practice. The First Circuit has held that, to succeed on this type of claim,

> a plaintiff must show that he comes within the protections of the ADA as a person with a disability and that the defendant's establishment is subject to the mandates of Title III as a place of public accommodation . . . . [T]he plaintiff must [also] show that the defendant has a discriminatory policy or practice in effect; that he (the plaintiff) requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods; that the requested modification—or a modification like it—was necessary to afford that access; and that the defendant nonetheless refused to modify the policy or practice.

Dudley, 333 F.3d at 307 (first citing 42 U.S.C. § 12102(2); then citing 42 U.S.C. § 12181(7); then citing PGA Tour, Inc. v. Martin, 532 U.S. 661, 683 n.38 (2001); then citing Amir v. St. Louis Univ., 184 F.3d 1017, 1027 (8th Cir. 1999); and then citing Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1058–60 (5th Cir. 1997)).

> [A] plaintiff bears the burden of establishing that he requested a specific reasonable accommodation to a policy which, if granted, would afford him access to the desired goods or services. Once the plaintiff meets that burden of showing that a modification is reasonable in a general sense, the defendant must make the modification unless he can show that such a change would work a fundamental alteration.

CADFI Corp. v. P.R. Tel. Co., No. 22-cv-01246, 2024 WL 866269, at *4 (D.P.R. Feb. 29, 2024) (quoting Massachusetts v. E*Trade Access, Inc., 464 F. Supp. 2d 52, 58 (D. Mass. 2006)).[4]

---

[4] The SJC has also indicated that it is "guided in [its] interpretation of [Chapter 272, § 98] by the construction afforded by the [Massachusetts Commission Against Discrimination ("Commission")]." Currier v. Nat'l Bd. of Med. Exam'rs, 965 N.E.2d 829, 842 (Mass. 2012) (citing Bynes v. Sch. Comm. of Boston, 581 N.E.2d 1019, 1022 (Mass. 1991)).

Similar to the Title III standard, the Commission has held that "[t]o establish a prima facie case of discrimination in a place of public accommodation [pursuant to Chapter 272, § 98], Complainant must demonstrate that she was: (1) a member of a protected class; (2) denied access, restricted, or treated differently from others not in her protected class, and (3) in a place of public accommodation." Carol A. Poliwczak v. Mitch's Marina & Campground, 2011 WL 3676790, at *6 (MCAD 2011) (citing Reese v. May Dept. Store, 24 MDLR 395 (2002); Bachner v. Charletons's Lounge & Restaurant, 9 MDLR 1268 (1984)); see also Soltys v. Wellesley Country Club, No. 0000050, 2002 WL 31998398, at *6 (Mass. Sup. Ct. Oct. 28, 2002) ("The

7-Eleven stipulated to the first two requirements, that is, that Mr. McNelley qualifies for protection under the ADA and the Store is a place of public accommodation. [ECF No. 18 at 2]. Plaintiffs presented evidence that it was the Store's practice to receive deliveries during operating hours and store the delivered inventory—boxes, bottles, and other items—in the aisles and the ramp leading up to the second floor; and that on repeated visits to the Store, these items made it difficult for Mr. McNelley to navigate the aisles and access the second floor via the ramp to do his shopping. Likewise, Ms. Paris testified that she requested that the Store move these items, and it was her understanding from interacting with Store employees that these items would not continue to be stored in these areas. Further, although these items were moved during one of Plaintiffs' visits, at Ms. Paris's request, it was her understanding that, rather than changing where delivered inventory was stored more generally, the Store would only move these items in the future if she called before coming. There was no evidence that such a change in policy would work a fundamental change to the business.

Considering "the evidence presented to the jury, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict," Osorio, 659 F.3d at 84, the Court concludes that the jury could have found that the Store's policy of storing delivered inventory in aisles and on the ramp inhibited Mr. McNelley's access and thus was discriminatory; that Ms. Paris requested a modification, that is, no longer storing these items in

---

plaintiff has three elements to establish for a prima facie case [under Mass. Gen. Laws ch. 272, § 98]: (1) plaintiff is a member of a protected category under the statute, and (2) plaintiff was denied access to or restricted in the use of (3) a place of public accommodation."). "Once Complainant [here, Plaintiff] has established a prima facie case of discrimination, . . . [a defendant] must articulate and produce credible evidence to support a legitimate, non-discriminatory reason for its actions." Poliwczak, 2011 WL 3676790, at *7 (quoting Wynn & Wynn v. MCAD, 729 N.E.2d 1068, 1078 (Mass. 2000), overruled on other grounds by Stonehill Coll. v. MCAD, 808 N.E.2d 205 (Mass. 2004)).

aisles and on the ramp, that was generally reasonable; and that, although the Store moved these items at Ms. Paris's request on one visit and told her she could call ahead to have items moved, it did not change its general policy for storing inventory. Without evidence that making this change "would alter the fundamental nature of its business, or that the requested modification poses a direct threat to the health or safety of others," Dudley, 333 F.3d 299 at 308, the Court finds that the evidence supports the jury's verdict that 7-Eleven discriminated against Mr. McNelley in a place of public accommodation in violation of Chapter 272, § 98.

### III.  NEW TRIAL

#### A.  Legal Standard

Pursuant to Rule 59, "[a] trial court may, on motion, grant a new trial in limited circumstances[]. . . [including] if the verdict is against the weight of the evidence or if the action is required in order to prevent injustice." Mejías-Aguayo v. Doreste-Rodríguez, 863 F.3d 50, 53–54 (1st Cir. 2017) (first citing Fed. R. Civ. P. 59(a)(1); and then quoting Jones ex rel. U.S. v. Mass. Gen. Hosp., 780 F.3d 479, 492 (1st Cir. 2015)). In assessing a motion for a new trial, "[t]he court may, though it is not required to, weigh the evidence and credibility of the testimony." Id. at 54 (citing Jones, 780 F.3d at 492). "Although a district court wields 'broad legal authority' when considering a motion for a new trial, . . . a 'district judge cannot displace a jury's verdict merely because [she] disagrees with it' or because 'a contrary verdict may have been equally . . . supportable.'" Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (first quoting de Pérez v. Hospital del Maestro, 910 F.2d 1004, 1006 (1st Cir. 1990); and then quoting Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996)). "[T]rial judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree." Id. (citing Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir. 1982)).

B. **Discussion**

7-Eleven asserts that even if the Court determines that 7-Eleven is not entitled to JMOL, a new trial is nonetheless warranted because although "[t]he jury specifically found that 7-Eleven did not 'willfully or knowingly' commit any unfair or deceptive acts[,] . . . the jury awarded [Mr.] McNelley $15,000 in punitive damages." [ECF No. 31 at 5].  Plaintiffs argue that 7-Eleven has waived this argument by failing to raise it before the jury was discharged. [ECF No. 32 at 11].[5] The First Circuit has long held that "a party waives inconsistency if it fails to object after the verdict is read and before the jury is dismissed." Bonilla v. Yamaha Motors Corp., 955 F.2d 150, 155–56 (1st Cir. 1992) (citing Austin v. Lincoln Equip. Assoc., 888 F.2d 934, 939 (1st Cir. 1989)); Torres-Arroyo v. Rullan, 436 F.3d 1, 6–7 (1st Cir. 2006) (finding plaintiffs' argument that the jury's liability finding was inconsistent with its award of no damages, as grounds for a new trial, was waived because "plaintiffs failed to object to the verdict after it was announced but before the court discharged the jury . . . [and s]ilence at that juncture constitutes a waiver." (internal citations omitted)).

Even assuming this argument has not been waived, the Court does not find a new trial is required based on an inconsistency in the jury's verdict.  The First Circuit has stated that it is "reluctant to order a new trial on the basis of inconsistent jury verdicts." Davignon v. Hodgson, 524 F.3d 91, 109 (1st Cir. 2008) (citing Connelly v. Hyundai Motor Co., 351 F.3d 535, 540 (1st Cir. 2003)).  "When a party claims that jury verdicts are inconsistent, [the First Circuit] 'attempt[s] to reconcile the jury's findings, by exegesis if necessary.'" Id. (quoting Acevedo–Diaz v. Aponte, 1 F.3d 62, 74 n.15 (1st Cir. 1993)).  "This exercise involves determining whether the jury could have, consistent with its instructions, rendered the challenged verdicts.  In

---

[5] There is no final transcript, but the Court's recollection is also that 7-Eleven did not raise an inconsistency objection before the jury was discharged, and 7-Eleven does not assert otherwise.

undertaking this analysis we view the facts in the light most favorable to the verdict." Id. (citing Merchant v. Ruhle, 740 F.2d 86, 91 (1st Cir. 1984)). The Court agrees with 7-Eleven that punitive damages are only available under Chapter 93A if a defendant is found to have acted knowingly or willfully. See Rhodes v. AIG Domestic Claims, Inc., 961 N.E.2d 1067, 1081 (2012) ("Under [Chapter] 93A, . . . [t]he judge may only award [punitive damages] if the defendant acted wilfully [sic] or knowingly." (citing Mass. Gen. Laws. ch. 93A, § 9(3))). As such, the jury's finding as to willfulness and knowledge would seem to be inconsistent with an award of punitive damages related to 7-Eleven's Chapter 93A violation. That said, the jury could have found that Mr. McNelley was separately entitled to punitive damages related to 7-Eleven's violation of Chapter 272, § 98, based on the Court's instructions that: (1) the jury could award Plaintiff punitive damages if they found that the acts of the Defendant were wanton and reckless, and (2) an act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety and rights of others. 7-Eleven presents no argument as to why this would not be a sufficient basis for awarding punitive damages. See generally [ECF No. 31]. The Court thus concludes that the jury's verdict is not inconsistent and therefore a new trial is not warranted on this basis.

## IV.   CONCLUSION

For the reasons discussed above, 7-Eleven's motion for JMOL or, alternatively, a new trial, [ECF No. 31], is <u>DENIED</u>.

**SO ORDERED.**

March 26, 2024                                                                 /s/ Allison D. Burroughs
                                                                                           ALLISON D. BURROUGHS
                                                                                           U.S. DISTRICT JUDGE