UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOAMS MCNELLEY AND KAREN PARIS, | * * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 22-cv-10046-ADB |
| | * * |
| 7-ELEVEN, INC., | * * |
| Defendant | * * * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

    Currently before the Court is Thomas McNelley's ("Plaintiff" or "McNelley") motion to recover attorneys' fees and costs. [ECF No. 40]. Defendant 7-Eleven ("Defendant") opposes the motion and disputes the reasonableness of the amount requested. For the reasons set forth below, the motion is GRANTED in part and DENIED in part, and the Court awards **$34,459.71** in attorneys' fees and costs to Plaintiff's counsel.

## I. BACKGROUND

### A. Factual Background

The Court assumes the parties' familiarity with the facts, and in any event, a complete factual background is unnecessary for resolution of the instant motion. In short, McNelley and Co-Plaintiff Karen Paris ("Paris" or "Plaintiff Paris"), brought this action against Defendant, alleging that 7-Eleven discriminated against McNelley and Paris because of their disabilities, in violation of the Massachusetts public accommodation law, Massachusetts General Laws Chapter 272, § 98, and the Massachusetts consumer protection law, Massachusetts General Laws Chapter 93A. [ECF No. 2-1 ("Second Amended Complaint" or "Sec. Am. Compl.") at 2].

Following a trial, the jury found Defendant liable for discrimination in a place of public accommodation solely as to McNelley and that Defendant had violated Chapter 93A, but had not done so willfully or knowingly. [ECF No. 29]. The jury awarded McNelley $5,000 in emotional distress damages and $15,000 in punitive damages and awarded no damages to Plaintiff Paris. [Id. at 3–4].

### B. Procedural History

Plaintiffs' counsel initially filed a motion for attorneys' fees and costs on April 13, 2024, [ECF No. 35], which Defendant opposed on April 29, 2024, [ECF No. 38]. The Court denied the motion without prejudice on the basis that the documents submitted by Plaintiffs' counsel included fees and costs associated with representing both McNelley and Paris, when only McNelley prevailed. [ECF No. 39]. In response to the Court's order, Plaintiffs' counsel subsequently filed a renewed motion on July 7, 2024, [ECF No. 40], and Defendant submitted a supplemental opposition on July 22, 2024, [ECF No. 43].

2

## II.   DISCUSSION

Counsel, on behalf of Plaintiff McNelley, now seeks fees for the work of Attorneys Walter Jacobs ("W. Jacobs") and Alexandria Jacobs ("A. Jacobs"). [ECF No. 40]. In support of the request, W. Jacobs submitted an affidavit and one single invoice outlining the fees incurred between September 8, 2020, and April 1, 2024. See [ECF No. 42 at 1–4 ("Jacobs Affidavit"), 6–24 ("Exhibit A" or "Ex. A")]. W. Jacobs' hourly rate is $400.00 and A. Jacobs' is $325.00, and combined both attorneys billed over 150 hours in the course of representing McNelley. [Jacobs Affidavit ¶¶ 11–12, 17, 19].

In response to the Court's order to supplement the request for attorneys' fees and costs with a more detailed breakdown of fees incurred in representing McNelley, counsel for Plaintiffs reduced the total amount of fees/costs sought in the original fee petition from $69,748.37 to $53,932.79.[1] Compare [ECF No. 37 at 24], with [ECF No. 40 ¶ 18]. Specifically, W. Jacobs subtracted $1,520.00 in legal fees devoted solely to Paris' claims[2] and further reduced the overall fee request by 21.05% "to reflect as reasonably as possible the time devoted to McNelley's claims for which he prevailed." [ECF No. 40 ¶¶ 13, 14]. McNelley's counsel now seeks an award of $53,616.92 in attorneys' fees and $315.87 for costs, for a total of $53,932.79.[3] [Id. ¶ 18].

---

[1] The total amount of $69,748.37 previously requested consisted of $69,432.50 in attorneys' fees and $315.87 in costs. [ECF No. 40 ¶ 15].

[2] Attorney W. Jacobs, whose hourly rate is $400.00, [ECF No. 42 ¶ 11], spent 3.8 hours litigating exclusively Plaintiff Paris' Massachusetts Commission Against Discrimination ("MCAD") claims, [ECF No. 40 ¶ 13], totaling $1,520.00 in legal fees.

[3] As to the attorneys' fees, this figure represents $69,432.50 - $1,520.00, which equals $67,912.50, and from which counsel then subtracted 21.05%. This, added to the $315.87 in costs, totals $53,932.79. [ECF No. 40 ¶¶ 13–18].

Defendant challenges the request on the following grounds: it (1) fails to provide detailed billing descriptions sufficient to allow the determination of a lodestar amount; (2) seeks to improperly recover fees incurred in separate proceedings before MCAD; (3) includes Attorney A. Jacobs' legal fees for attending the trial but whose role in the trial is unclear as she "provided no argument to the Court and questioned no witnesses," [ECF No. 43 at 2]; and (4) still requests fees accrued from litigating Plaintiff Paris' and McNelley's unsuccessful claims despite the revised calculation in the renewed motion. See generally [ECF Nos. 38, 43]. Specifically, Defendant argues that once reductions are made to reflect the deficiencies identified in numbers (1) to (3), the Court, in order to account for (4), should "make a 50% reduction . . . for the work done in pursuit of Paris' claims and then another 71% reduction . . . to reflect the time billed to claims that McNelley did not prevail upon." [ECF No. 43 at 2].

### A.   Attorneys' Fees

In the First Circuit, courts follow the so-called lodestar method for calculating reasonable attorneys' fees. The lodestar method involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure.

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary. [T]he court has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort.

After determining the number of hours reasonably expended, the second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and specialized competence. In determining a reasonable hourly rate, a court must consider the type of work performed, who performed it, the expertise that it required, and when it was undertaken. The moving party bears the burden of establishing an attorney's level of skill and experience, and when that party fails to provide documentation as to the attorney's qualifications, a court may reduce the hourly rate.

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors. Those

> factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Day v. Gracy, No. 18-cv-10396, 2019 WL 3753947, at *2–3 (D. Mass. Aug. 8, 2019) (alteration in original) (internal citations and quotation marks omitted).

"The party seeking the award has the burden of producing materials that support the request." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "These materials should include counsel's contemporaneous time and billing records, suitably detailed, and information [about] the law firm's standard billing rates." Id. (citing Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295–96 (1st Cir. 2001)). While the lodestar "constitute[s] the usual starting point," the Court's "discretion is by no means shackled by" the prevailing party's time records. Gay Officers Action League, 247 F.3d at 296. "For example, it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." Id. (citing Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1991)). Additionally, "[w]hen a plaintiff prevails on some, but not all, of multiple claims, a fee reduction may be in order." Id. at 298 (first citing Hensley, 461 U.S. at 434–35; and then citing Coutin, 124 F.3d at 339–40).

### 1. Hours Spent on Unsuccessful Claims/Non-Prevailing Party

As a threshold matter, only a prevailing party—that is, one who stands to benefit from defendant's modified behavior by receiving, for example, damages—may request attorneys' fees

and costs. Farrar v. Hobby, 506 U.S. 103, 111–12 (1992) ("A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); Norris v. Murphy, 287 F. Supp. 2d 111, 114 (D. Mass. 2003).  Further, a party is not entitled to fees accumulated in pursuit of claims that were ultimately unsuccessful, Trainor v. HEI Hosp., LLC, 699 F.3d 19, 35 (1st Cir. 2012), "unless the court finds that 'the unsuccessful claims are "sufficiently interconnected" with [the] claims on which [the] plaintiff prevails.'" Killeen v. Westban Hotel Venture, LP., 872 N.E.2d 731, 739 (Mass. App. Ct. 2007) (alterations in original) (quoting Peckham v. Cont'l Cas. Ins. Co., 895 F.2d 830, 842 (1st Cir. 1990)); see Ross v. Cont'l Res., Inc., 899 N.E.2d 847, 861 (Mass. App. Ct. 2009) (fees shall not be awarded on unsuccessful claims unless the time spent on those claims was "so inextricably intertwined with the time spent on successful claims that the two cannot be separated"); see also Killeen, 872 N.E.2d at 739 ("As stated by the Federal courts in cases awarding attorney's fees, no fee should 'be awarded for services [employed pursuing an] unsuccessful claim'") (quoting Hensley, 461 U.S. at 435) (alteration in original).

Both Massachusetts General Laws Chapter 272, § 98 and Massachusetts General Laws Chapter 93A, the statutes underlying the two counts on which McNelley succeeded, expressly state that a prevailing party is entitled to recover reasonable attorneys' fees and costs. RFF Family P'ship, LP v. Link Dev., LLC, No. 14-cv-10065, 2015 WL 1472253, at *2 (D. Mass. Mar. 31, 2015), aff'd sub nom. RFF Family P'ship, LP v. Ross, 814 F.3d 520 (1st Cir. 2016) (as to Chapter 93A); Joyce v. Town of Dennis, 720 F.3d 12, 22 n.16 (1st Cir. 2013) ("The Massachusetts public accommodation provisions[,] [that is, Mass. Gen. Laws ch. 272,] have been integrated into the anti-discrimination scheme governed by chapter 151B, and the same remedial

provisions apply."); see also id. at 26 (Mass. Gen. Laws ch. 151B, § 9 is the "applicable fee-shifting provision" for a Mass. Gen. Laws ch. 272, § 98 claim).

During the course of the litigation, however, Plaintiff McNelley asserted additional claims that were ultimately unsuccessful, including negligence, disability discrimination and retaliation under Massachusetts General Laws Chapter 151B,[4] violation of 940 Mass. Code Reg. 316, and declaratory relief in connection to each claim.  See [Sec. Am. Compl. at 12–23]. Separately, the lawsuit was initially brought as a class action, although Plaintiffs did not move for or obtain class certification.  [ECF No. 38 at 5]; see generally [Sec. Am. Compl.].  In sum, out of a total seven claims, McNelley prevailed on two.  See [ECF No. 38 at 5].

Nonetheless, the unsuccessful claims, liberally construed, are sufficiently intertwined with the successful claims as they arose from a "common core of facts."  McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 53 F. Supp. 3d 312, 319–20 (D. Mass. 2014).  That is, they all concerned "a common core of facts regarding" Defendant's actions which impacted McNelley's ability to access and move in the store on account of his disability.  Id. at 320; Trainor, 699 F.3d at 35; see generally [Sec. Am. Compl.].  McNelley, however, is not entitled to recover any fees related to costs in pursuing the class action, given that he did not even move for class certification.  Based on the invoice submitted, McNelley spent a total of $160.00 on legal fees related to the class certification.  [Ex. A at 9, 13–14].

In the revised request for attorneys' fees, McNelley deducted 21.05% in legal fees on the basis that out of 133 paragraphs in the Complaint, only twenty-eight paragraphs (that is, 21.05%) refer to Plaintiff Paris' hearing disability.  [ECF No. 40 ¶¶ 10–13].  Defendant contends that

---

[4] Plaintiff McNelley appears to suggest that he also prevailed on his Chapter 151B claims, which is inaccurate.  Compare [ECF No. 41], with [ECF No. 29]; see also [ECF No. 33].

7

because only McNelley prevailed on his claims, the Court should deduct 50% of the total legal fees. [ECF No. 43 at 2]. Although the Court is not satisfied that a 50% split is appropriate here given how closely intertwined McNelley and Paris' claims are, it is also not persuaded by McNelley's approach, which does not adequately reflect that only McNelley's legal relationship with Defendant was altered. The Court will therefore deduct an additional 10% from the claimed attorneys' fees in the amended filing. See infra.

Defendant further asserts that McNelley's fee request improperly contains entries starting on September 8, 2020, [Ex. A at 1], when this action did not commence until a year later, on September 27, 2021, [ECF Nos. 2 ¶ 1; 38 at 2–3; 43 at 2]. Specifically, Defendant argues that legal fees incurred in the MCAD proceeding, which preceded the instant action, should be excluded from any lodestar amount. [ECF No. 43 at 2].

As an initial matter, legal work pursued "outside the four corners of [a] particular case" when "necessary to the matter at hand" is compensable. Pérez-Sosa v. Garland, 22 F.4th 312, 324–25 (1st Cir. 2022) (discussing the issue in the context of Title VII's fee-shifting provision). Here, the Court observes that Chapter 151B, § 4 requires that an aggrieved party file a timely complaint with MCAD before bringing an action to court. See Mass. Gen. Laws ch. 151B, §§ 5 (setting out the MCAD complaint proceedings), 9 (providing that for claims brought under § 4, the administrative procedure in § 5 "shall, while pending, be exclusive"). Accordingly, because MCAD filings are a prerequisite to a discrimination claim under Chapter 151B, § 4, the hours spent on MCAD proceedings may "appropriately and reasonably [be] included in [a] fee request." Fryer v. A.S.A.P. Fire & Safety Corp. Inc., 750 F. Supp. 2d 331, 336 (D. Mass. 2010), aff'd, 658 F.3d 85 (1st Cir. 2011). In relation to Chapter 272, § 98 claims, however, district courts are divided on whether the statute similarly requires exhaustion of remedies before

MCAD.  Compare Quarterman v. City of Springfield, 716 F. Supp. 2d 67, 77 (D. Mass. 2009) (dismissing a ch. 272 § 98 claim because "Massachusetts law requires that all . . . state-law discrimination claims be brought before the MCAD before a lawsuit may be filed") and Griffiths v. Town of Hanover, No. 11-cv-12115, 2012 WL 3637791, at *4 (D. Mass. Aug. 21, 2012) (same) and Do Corp. v. Town of Stoughton, No. 13-cv-11726, 2013 WL 6383035, at *14 (D. Mass. Dec. 6, 2013) (same), with CapoDiCasa v. Town of Ware, No. 17-cv-30079, 2018 WL 3966303, at *3 (D. Mass. Aug. 17, 2018) (finding that plaintiffs were not required to bring Chapter 272, § 98 claim before MCAD) and Kaiser v. Kirchick, 662 F. Supp. 3d 76, 97 (D. Mass. 2023) (noting that failure to exhaust remedies before MCAD in Chapter 272, § 98 cases is not fatal to a party's claim) (citing Peters v. Bos. Props., Inc., No. 2084-cv-02447, 2021 WL 3493907, at *5 (Mass. Super. Ct. June 15, 2021) ("[A] plaintiff alleging discrimination in a place of public accommodation is not required to exhaust the administrative remedies available under [Mass. Gen. Laws ch.] 151B, § 5.")).

In light of the uncertainty as to whether a public accommodation claim must first be brought before MCAD,[5] and, more importantly, given that Chapter 151B and Chapter 272, § 98 claims are sufficiently interconnected, the Court is not persuaded that an additional subtraction of attorneys' fees is warranted or feasible.  Beyond the deduction of $1,520.00, the Court therefore leaves W. Jacobs' request for legal fees prior to the state-court proceeding intact.

---

[5] Like the district court in CapoDiCasa, the state court in Peters found that because Chapter 151B, § 5 expressly states that the "institution of proceedings under [§ 5], or any order thereunder, shall not be a bar to proceedings under [Chapter 272] section[] . . . ninety-eight," discrimination claims under the public accommodation law require no exhaustion of administrative remedies.  2018 WL 3966303 at *3; 2021 WL 3493907 at *5.  Although the Court need not and will not rule on this issue, the plain statutory language of § 5—which the courts in Quarterman, Griffiths, and Do Corp. did not consider—suggests that a MCAD proceeding under Chapter 272, § 98 is not strictly necessary in order to bring claims to court.

In sum, in order to adequately reflect that a prevailing party is only able to recuperate legal fees on successful claims, the Court will deduct all legal fees related to the class certification which total $160.00 and subtract 10% from the claimed attorneys' fees.  See infra.

### 2. Hours Reasonably Expended

In Hensley, the Supreme Court held that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ."  461 U.S. at 434.  As the fee applicant, Plaintiff "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Id. at 437.  After the applicant has made its case, the district court must review the fee request and exclude hours that were not "reasonably expended."  Id. at 434.  "There is no precise rule or formula" for determining fee reductions in this context.  Id. at 436.  "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award . . . .  The court necessarily has discretion in making this equitable judgment."  Id. at 436–37.  "The court may also reduce billed hours for non-complex tasks."  Jin Hai Li v. Foolun, Inc., 273 F. Supp. 3d 289, 294 (D. Mass. 2017).

"The First Circuit does not require courts to set forth an hour-by-hour analysis of a fee request."  Jin Hai Li, 273 F. Supp. 3d at 294 (quotations omitted).  "Nevertheless, when a district court makes a substantial reduction in fees requested, the Court should offer reasonably explicit findings and has a burden to spell out the whys and wherefores."  Id. (internal quotations and citations omitted).

Upon review of the time records submitted by McNelley's counsel, the Court will not award fees associated with A. Jacobs' billing entries related to her trial attendance.  [Ex. A at 18].  First, McNelley offered no information from which the Court could evaluate the

reasonableness of A. Jacobs' rate, including that the Court lacks basic resume information such as how long she has practiced law and her relative seniority within the firm.  See [Jacobs Affidavit].  Second, as Defendant noted, [ECF No. 38 at 6], the billing entries provide no insight into her role and how precisely she assisted lead Attorney W. Jacobs in preparing for the trial. See [Ex. A at 9–10, 14, 16–18].  These fees may well have been compensable had counsel taken the time to explain her role, but given the paucity of information, the Court will subtract the fees associated with A. Jacobs' trial attendance which totals $4,680.00.

Separately, Defendant urges the Court to reduce McNelley's fee request because the billing entries lack specificity.  [ECF No. 43 at 1].  The Court notes that the invoice submitted by McNelley provides mostly vague descriptions, such as "email from client," "email to client," or "phone call with client," which offer little guidance in assessing the reasonableness of the McNelley's request.  See generally [Ex. A].  The First Circuit has held that hours categorized with such vague titles may be appropriately discounted.  See, e.g., Pérez-Sosa, 22 F.4th at 329 (finding no abuse of discretion where district court discounted hours by 30% because counsel did not provide it with "sufficient information to glean the reasonableness of the time spent" and where numerous entries read only "Meeting with Client," "Telephone conference [with] Client," or "Electronic correspondence [to or from] Client"); see Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) ("nebulous" entries containing "only gauzy generalities" that do not allow a district court to establish the reasonableness of the time spent should be discounted); see Janney Montgomery Scott LLC v. Tobin, 692 F. Supp. 2d 192, 199 (D. Mass. 2010), abrogated on other grounds, 571 F.3d 162 (1st Cir. 2009) ("This Court discounts time billed that is vague and lacks sufficient detail in its description. . . .  A description reading 'Review arbitration issue' is hardly sufficient for the purpose of awarding fees." (citations omitted)).  Given the lack of detail and

use of generic billing entries, the Court will apply an additional across-the-board lodestar reduction of 20%. Given the lack of detail in the single invoice submitted, the Court would be well within its rights to discount the fees further but declines to do so given that the overall reasonableness of the total legal fees accrued in this case and the Court's interest in not disincentivizing counsel from taking on these types of cases.[6]

### 3. Rates

"[H]ourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" Guckenberger v. Bos. Univ., 8 F. Supp. 2d 91, 105 (D. Mass. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). "The fee-seeker must carry the burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialled counsel." Hutchinson, 636 F.3d at 16; see also Haddad v. Wal–Mart Stores, Inc. (No. 2), 920 N.E.2d 278, 282 (Mass. 2010) ("A determination of a reasonable hourly rate begins with 'the average rates in the attorney's community for similar work [] by attorneys of the same years' experience.'" (quoting Stratos v. Dep't of Pub. Welfare, 439 N.E.2d 778, 787 (Mass. 1982))).

Defendant seemingly does not challenge attorney W. Jacobs' proposed rate ($400), see generally [ECF No. 43], and considering his education, credentials, and relevant professional experience, [Jacobs Affidavit ¶¶ 7–11, 13–16], the Court finds no reason to dispute the reasonableness of his hourly rate. As to Attorney A. Jacobs' hourly rate ($325), Defendant similarly does not contest the reasonableness of her rate or the fact that she worked on the case

---

[6] On the flip side, the Court would like to incentivize proper accounting practices.

outside of the courtroom and the Court will therefore accept it on this basis, coupled with the Court's general knowledge of billing rates.  See generally [ECF No. 43].

### 4. Lodestar Amount

For the reasons stated above, the Court calculates the lodestar as follows:

|  | Reasonable Hours Billed | Rate |  |  |
|---|---|---|---|---|
| Attorney W. Jacobs | Approx. 158.225 | $ 400 | $63,290.00 |  |
| Attorney A. Jacobs | Approx. 18.9 | $ 325 | $6,142.50 |  |
|  |  | Subtotal | $69,432.50 |  |
|  |  | McNelley Reduction's, see [ECF No. 40 ¶¶ 15–17] | $1,520.00 +$14,295.58 = $53,616.92 |  |
|  |  | Class Action related Reduction | $160.00 | 0.4 hours at a rate of $ 400 per hour |
|  |  | Attorney A. Jacobs' trial Reduction | $4,680.00. | 14.4 hours at a rate of $ 325 per hour |
|  |  | Lodestar Reduction | -30%[7] |  |
|  |  | TOTAL | 34,143.84 |  |

### B.     Costs

McNelley seeks costs for the $315.87 filing fee, which Defendant does not contest and which both Mass. Gen. Laws chs. 93A and 272 allow.  See RFF Fam. P'ship, LP, 2015 WL 1472253 at *2 (as to Chapter 93A); see also Mass. Gen. Laws ch. 151B, § 9. Accordingly, the Court will award McNelley $315.87 in costs.

---

[7] This reflects a 10% reduction to account for the fact that only McNelley is the prevailing party and a 20% subtraction due to lack of detail in the billing entries.  See supra.

## III.	CONCLUSION

Accordingly, for the reasons noted above, McNelley's motion, [ECF No. 40], is <u>DENIED</u> in part and <u>GRANTED</u> in part.  Plaintiff shall be awarded **$34,459.71** in attorneys' fees and costs.

**SO ORDERED.**

November 21, 2024	/s/ Allison D. Burroughs
	ALLISON D. BURROUGHS
	U.S. DISTRICT JUDGE